**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JASON R. MOULTON,

    Plaintiff,

vs.                                             Case No. 3:11-cv-382-J-37JBT

CARLA DESUE; AMANDA MIXON;
CHARLES HENDRIX; LANCE
HOLLINGSWORTH; and GORDON
SMITH,

    Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendants' Opposed Joint Motion to Strike Trudy Haider's July 31, 2012 Affidavit (Doc. 100), filed August 20, 2012; and

2. Plaintiff's Response to Defendant's Joint Motion to Strike Trudy Haider, R.N.'s July 31, 2012 Affidavit (Doc. 106), filed August 27, 2012.

Upon consideration, the Court hereby denies the motion.

## BACKGROUND

Plaintiff Jason R. Moulton, as personal representative of the estate of Tia Marie Sloama Ritch, deceased, brought this action against Defendants Carla DeSue, Amanda Mixon, Charles Hendrix, Lance Hollingsworth, and Gordon Smith. (Doc. 1.) On June 28, 2009, Ritch was placed in pre-trial confinement at the Bradford County Jail in Starke, Florida, when she was approximately six to eight weeks pregnant. (*Id.* ¶¶ 19–20.) Defendants DeSue, Mixon, Hendrix, and Hollingsworth were Correctional Officers at the Bradford County Jail. (*Id.* at ¶ 20.) Defendant Smith was the Bradford County

Sheriff. (*Id.*) On July 3, 2009, Ritch died from a ruptured ectopic pregnancy while in the Bradford County Jail. (*Id.* ¶ 37.) Plaintiff brought suit against Defendants, alleging civil rights violations under 42 U.S.C. § 1983 and state law negligence claims. (*Id.* ¶¶ 2–3.)

On July 31, 2012, Trudy Haider, Plaintiff's retained expert, gave deposition testimony and later signed a separate affidavit. (Docs. 102-1, 103-1, 103-2, 95-3.) Defendants filed a motion to strike Haider's affidavit on the grounds that it is "inherently inconsistent and contradictory to" her deposition testimony and "appears to be nothing more than a rouse [sic] or sham." (Doc. 100, p. 4.) Plaintiff opposed the motion on the grounds that no direct contradiction exists. (Doc. 106, pp. 5–8.)

## STANDARDS

The Court "may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 656 (11th Cir. 1984). However, "in light of the jury's role in resolving questions of credibility," a court should not reject an affidavit merely because "it is at odds with statements made in an earlier deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980). An affidavit may be considered a sham only when "clear answers to unambiguous questions . . . [contradict,] without explanation, previously given clear testimony." *Van T. Junkins*, 736 F.2d at 657. "[E]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (internal quotation marks and citation omitted).

## DISCUSSION

Defendants argue that two statements from Haider's affidavit contradict statements from her earlier deposition. First, Haider's affidavit asserts that she gained

2

advanced "hands-on" training over a period of nine years on "the core duties of correctional officers, including the care, custody, and control of both pre-trial detainees . . . , and inmates in custody of local sheriffs." (Doc. 95-3, ¶ 2(A).). Second, it contends that the actions and inaction of Defendants fell below the acceptable standard of care for correctional medical emergency situations. (Doc. 70-1, pp. 5–7 (adopted by Doc. 95-3, ¶ 1).)

Defendants aver that the following statements in Haider's deposition are contradicted by the above statements from her affidavit.

(1) Haider stated that she did not have formal training regarding deliberate indifference. (Doc. 102-1, p. 22, Haider Dep. 83:12–17, July 31, 2012.)

(2) Haider stated that she was neither a correctional officer nor had she attended academy training to become one. (*Id.* at 15:5–7; Doc. 103-2, p. 2, Haider Dep. 203:6–7.)

(3) Haider stated that she did not know what courses were taught at the corrections academy.[1] (Doc. 103-1, p. 14, Haider Dep. 155:25–156:19; Doc. 103-2, p. 2, Haider Dep. 203:8–18.)[2]

(4) Haider stated that she had never been certified as a corrections officer in the

---

[1] Defendants cite to "Haider Dep. 156:25-156:19, 203:8-18" for the proposition that Haider has no knowledge of "the training of correctional officers in their day-to-day duties." (Doc. 100, p. 3.) The Court takes that to be a scrivener's error, and understands Defendants to refer to pages 155:25–156:19.

[2] At pages 155:25–156:19, Haider stated that she does not know whether the academy trains officers in either emergency medical conditions or first aid. At page 203:8–18, Haider stated that she does not know what courses are taught at the academy. As such, Defendants' assertion that Haider "had no knowledge regarding the training of correctional officers in their day-to-day duties" appears to mischaracterize the substance of the testimony. The Court understands Haider's statements at pages 155:25–156:19 and 203:8–18 to mean that Haider did not know what courses were taught at corrections academy, including whether the specific courses in emergency medical conditions or first aid were taught.

3

state of Florida. (Doc. 103-2, p. 2; Haider Dep. 203:2–5.)[3]

(5) Haider stated that she had never been responsible for evaluating the performance of a corrections officer. (*Id.* at 203:19–21.)

(6) Haider stated that she did not know "every duty a corrections officer holds" and that "there are [some] duties that a corrections officer performs" about which she believes she does not have expertise. (*Id.* at 210:14–211:23.) She further stated that she is an expert in correctional medicine. (*Id.* at 211:20–212:6.)

Taken together, the Court finds that the affidavit's assertions that Haider gained advanced "hands-on" training, rather than formal training, on the core duties of corrections officers and that she understands the standard of care in cases of medical emergency (Doc. 95-3 ¶ 2(A)) are fully consistent with the above deposition statements.

Haider has nine years of experience meeting the medical needs of detainees in corrections facilities and spending time working alongside corrections officers. (Doc. 95-3.) In this time, Haider alleges that she has gained practical knowledge in the core duties of corrections officers, has come to understand the standards of care in medical emergencies, and has come to recognize the conduct that falls below those standards. (Doc. 95-3, ¶ 2(A); Doc. 70-1, pp. 5–7.) The statements Haider made in her deposition that she was never a corrections officer herself, did not have knowledge of the content of academy courses or formal training regarding standards of care, has never been in a position to evaluate the performance of a corrections officer, and is not familiar with

---

[3] Defendants contend that Haider stated that she "had never supervised correctional officers" at page 203:2–5. (Doc. 100, p. 3.) The questioning was as follows: "Q[:] And you have never held certification of any kind in the state of Florida as a corrections officer; is that right? A[:] No I have not." (Doc. 103-2, p. 2; Haider Dep. 203:2–5) (emphasis removed). The Court understands Haider to have stated that she herself had never been certified as a corrections officer.

4

"every" duty of a corrections officer are not inconsistent with Haider having experience-based knowledge gained over her years as a corrections nurse as to the core duties of and standards of care applicable to corrections officers.

Finding an affidavit to be a "sham" requires more than statements that are simply at odds with previous deposition testimony. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980). As discussed above, the statements in the affidavit and deposition testimony highlighted by Defendants are not contradictory, either directly or through inference. Further, binding precedent cautions against striking an affidavit unless there is a direct and outright contradiction, leaving minor discrepancies to the jury's determination of credibility. *Id.*; *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986); *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). As such, the Court determines that Haider's July 31, 2012 affidavit (Doc. 95-3) is not a sham.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Opposed Joint Motion to Strike Trudy Haider's July 31, 2012 Affidavit (Doc. 100) is **DENIED**.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on October 31, 2012.

ROY B. DALTON JR.
United States District Judge

Copies: Counsel of Record

Case 3:11-cv-00382-RBD-JBT Document 135 Filed 10/31/12 Page 6 of 6 PageID 2554